852 So.2d 1141 (2003)
STATE of Louisiana, Appellee,
v.
Walter HANNON, a/k/a Walter Elmore, Appellant.
No. 37,351-KA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2003.
*1142 Louisiana Appellate Project, by Peggy J. Sullivan, Monroe, for Appellant.
Jerry L. Jones, District Attorney, H. Stephens Winters, Assistant District Attorney, for Appellee.
*1143 Before STEWART, CARAWAY and DREW, JJ.
STEWART, J.
The defendant, Walter Hannon ("Hannon"), was convicted by a jury of attempted forcible rape and attempted oral sexual battery. He was sentenced and found to be a habitual offender. His original sentence was vacated and he was re-sentenced to serve 32 years at hard labor for attempted forcible rape and 7 years hard labor for attempted oral sexual battery. The latter sentence was ordered to be served without benefits. The defendant now appeals. For the reasons that follow, we affirm his convictions, but we vacate his sentences, and remand the matter for further proceedings consistent with this court's opinion.

FACTS
On or about November 2, 2000, the victim, T.W.[1], a 13-year-old male, encountered the defendant on his way to a playground near the victim's home. The defendant raced and "slap boxed" with the victim, and told the victim his name was Walter Hannon. The next day, the victim was playing in his front yard area at 1903 Samuel Drive in Monroe when he was grabbed by the defendant, who covered his mouth and arms and dragged him down the street. The defendant then took the victim "the back way" to an uninhabited structure located on Samuel Drive and opened the door with a key. The victim, who weighed about 105 pounds and was approximately 5'5" tall, was taken to a dark room by the defendant. The victim was alone in the room with the defendant. Some Vaseline and a towel were already in the room. The defendant performed oral sex on the victim. The defendant then put Vaseline on his own private parts and forced the victim to have anal intercourse. The defendant told the victim that he would kill him if he told anyone. The defendant then took the Vaseline and towel with him and left.
The victim went home and told his grandmother, who called the police. The victim went in a car with some family members to look for the defendant. They encountered the defendant when he came out of a house near the corner where he and the victim had raced the day before. David Banks, who was the boyfriend of the victim's aunt and one of the persons riding with the victim, got out of the car and asked the defendant for a cigarette while the aunt tried to get the attention of a nearby law enforcement officer, but the defendant "took off running."
In the early morning hours after the crimes, the victim was taken to St. Francis Medical Center where a rape examination was performed and physical evidence was removed from the victim's body. The examining physician, Dr. Robert Carey, observed bruising around the victim's rectum, anus and a mucosal tear of the victim's anus which could have been caused by penile penetration. The victim told the examining physician that the defendant performed oral sex on his body and anally penetrated him. Among the other information the physician noted in the history that he took from the victim was that the victim said the defendant kissed his neck. A couple of days later, the victim was shown a photographic lineup by police. The victim selected the defendant's picture. The victim also gave a recorded statement to police.
*1144 The defendant was charged by a bill of information with forcible rape and oral sexual battery. The defendant was tried by a jury. Evidence introduced at trial included the testimony of the victim, who related the facts and circumstances surrounding the crimes, and made an in-court identification of the defendant as the assailant. During his trial testimony, the victim acknowledged that he told police during his recorded statement that the defendant took him to 1938 Samuel Drive. However, the victim corrected himself at trial and stated that the rape occurred at 1930 Samuel Drive. The victim also denied telling police during his recorded statement that the defendant tried to open any other doors. The victim said that there was nothing unusual about the house in which the crimes occurredhe asserted that it had not been burned. On cross-examination, the victim clarified that he was not forced to perform oral sex on the defendant. The victim did not recall telling the examining physician that the defendant kissed his neck.
At trial, the examining nurse and physician testified regarding the results of the victim's physical examination and the collection of the physical evidence contained in the rape kit. Investigating officers testified regarding the investigation of the crime and the collection and chain of evidence. The state presented evidence that the defendant was born on July 23, 1967, and that the victim was born on September 3, 1987.
Linda Armstrong of the North Louisiana Crime Lab, an expert in DNA analysis, testified that she analyzed the DNA suspected reference samples obtained from the defendant and compared them to DNA samples obtained from the rape kit performed on the victim. Armstrong determined that the sperm fraction from the victim's anal swab was consistent with the DNA profile she obtained from the reference sample of the defendant. Specifically, Armstrong calculated that the probability of finding the same DNA profile if the DNA had come from an African American other than the defendant was approximately one in fourteen point seven trillion. Armstrong's conclusions and calculations were confirmed at trial by Dr. Pat Wojtkiewicz, another expert in DNA analysis and statistical data.
The state also presented the trial testimony of Earnest Gary Hamilton, Sr., the owner of West Ouachita Painting Company, who employed the defendant at the time of the crimes, and who saw him working on Samuel Drive on the date of the crimes. Hamilton testified that the defendant had worked on the apartments on either side of 1938 Samuel Drive and had access to a master key. He related that the unit located at 1938 Samuel Drive had been burned and was unlocked. Hamilton's payroll records, confirming the defendant's employment on the date of the crimes, were introduced at trial. Also, Tijuana Thompson, who was employed by the Monroe Housing Authority, testified that the defendant was receiving payments for work being done on Samuel Drive at the time the crimes were committed.
The defense presented the testimony of Theresa Wilson, an alibi witness. Wilson was living with the defendant at the time of the crime and is the mother of his child. She testified that the defendant was at her residence on the evening of the crimes from a little after five o'clock until about eleven or twelve o'clock. On cross-examination, Wilson acknowledged that she had feelings for the defendant. She also acknowledged that she never told the authorities that the defendant was with her until just before trial. The defense also presented the testimony of two witnesses who were also present to corroborate her story.
*1145 The defendant was convicted of attempted forcible rape and attempted oral sexual battery. On July 22, 2002, the trial court sentenced the defendant to serve 20 years at hard labor on count one, attempted forcible rape, and 5 years at hard labor on count two, attempted oral sexual battery.
On August 22, 2002, the defendant was found to be a multiple offender. His original sentence was vacated and he was sentenced to serve 32 years at hard labor for attempted forcible rape and 7 years hard labor for attempted oral sexual battery. The sentences were ordered to be served concurrently to one another, but consecutively with any sentence the defendant was serving for his parole violation. The sentence for attempted forcible rape was ordered to be served without benefit of parole, probation or suspension of sentence. The defendant's timely filed motions to reconsider sentence were denied. This appeal followed.

DISCUSSION

Insufficiency of the Evidence
Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.4/19/02), 813 So.2d 424.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Ponsell, 33,543 (La. App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008 (on rehearing), writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
However, this court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. In the absence of internal contradiction or *1146 irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ponsell, supra; State v. White, 28,095 (La. App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048. This is equally applicable to the testimony of sexual assault victims. State v. Rives, 407 So.2d 1195 (La.1981); State v. Thomas, 30,490 (La.App.2d Cir.4/8/98), 711 So.2d 808, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8; State v. Free, 26,267 (La.App.2d Cir.9/21/94), 643 So.2d 767, writ denied, 94-2846 (La.3/10/95), 650 So.2d 1175; State v. Standifer, 513 So.2d 481 (La.App. 2d Cir.1987). Indeed, such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, supra; State v. Watson, 32,203 (La.App.2d Cir.8/18/99), 743 So.2d 239, writ denied, XXXX-XXXX (La.3/31/00), 759 So.2d 69; State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).
La. R.S. 14:42.1 provides in part:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
* * *
La. R.S. 14:27 provides, in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
To support a conviction for attempted forcible rape, the state must prove that defendant had the specific intent to commit forcible rape and that he did an act for the purpose of, and tending directly toward, the accomplishing of his objective. La. R.S. 14:27 and 14:42.1; State v. Dorsey, 30,683 (La.App.2d Cir.6/24/98), 718 So.2d 466, writ denied, 98-2227 (La.12/18/98), 732 So.2d 54; State v. Bryant, 607 So.2d 11 (La.App. 2d Cir. 1992), writ denied, 92-3082 (La.2/25/94), 632 So.2d 760; State v. Bailey, 585 So.2d 1245 (La.App. 2d Cir.1991). Specific intent, being a state of mind, need not be proved as a fact but may be inferred from the circumstances involved and the actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Dorsey, supra; State v. Bailey, supra.
La. R.S. 14:43.3, regarding, oral sexual battery, provides in part:
A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
B. Lack of knowledge of the victim's age shall not be a defense.
*1147 A jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. State v. Mitchell, 35,970 (La. App.2d Cir.5/08/02), 818 So.2d 807; State v. Bryant, 33,078 (La.App.2d Cir.3/1/00), 754 So.2d 387. Even if an offense is legislatively designated as responsive by La. C.Cr.P. art. 814, a defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. La. C.Cr.P. art. 814(C). State v. Mitchell, supra; State v. Johnson, 30,078 (La.App.2d Cir.12/10/97), 704 So.2d 1269, writ denied, 98-0382 (La.6/26/98), 719 So.2d 1054. Absent a contemporaneous objection, however, a defendant cannot complain if the jury returns a legislatively-approved responsive verdict, even where there is insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024 (La.1988), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 1990); State v. Mitchell, supra. In this instant case, the record does not indicate that a contemporaneous objection was made.
The defendant argues that the victim was the only witness to the crimes, and his testimony was varied and unreliable. Particularly, the defendant alleges that the victim's trial testimony was inconsistent with his statement to the investigating police regarding both the address of the house in which the crimes were committed (1930 Samuel Drive or 1938 Samuel Drive) and whether the house had been burned. The defendant also noted other alleged inconsistencies in victim's account of the events surrounding his attack.
The defendant argues that the state did not present sufficient evidence of the crime of attempted forcible rape. Specifically, the defendant contends that the victim presented no testimony that he was prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. The defendant notes the victim's testimony regarding encountering a man who asked for a cigarette while he was being dragged down the street and questions why this man did not ask why the victim was being dragged. Regarding the DNA evidence, the defendant argues that the sperm sample could have been transferred without contact between the two persons-via a towel, lubricant or sheet. Finally, the defendant argues that he presented credible evidence through alibi witnesses that he was at his girlfriend's home at the time the crimes were committed.
Nonetheless, the record supports the conclusion that the evidence, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to have found the essential elements of both crimes proven beyond a reasonable doubt. Jackson v. Virginia, supra. The testimony of this victim alone was sufficient to convict the defendant. State v. Ponsell, supra. Also, State v. Rives, supra; State v. Thomas, supra; State v. Free, supra; State v. Standifer, supra.
The victim positively identified the defendant as the perpetrator of both offenses both in court and during a photographic lineup. Regarding the charged offense of forcible rape, the victim further testified that the defendant forced him to engage in anal sexual intercourse, and he was prevented from resisting by threats of death under circumstances in which he reasonably believed that such resistance would not have prevented the rape. See La. R.S. 14:42.1 A(1). The victim, who was youthful and small in size, was physically prevented from resisting the defendant's *1148 attack, and the emotional "shock" obviously impeded his resistance, as well. The totality of the circumstances of the crime supports this conclusion, including the 20-year age difference of the victim and defendant and defendant's forceful taking of the victim into a secluded location to which the defendant had a key. The victim's testimony alone would have been sufficient proof even if the state had not introduced medical, scientific, or physical evidence to prove the commission of these offenses by the defendant. See State v. Ponsell, supra; State v. Turner, supra. However, medical evidence introduced at trial did indeed corroborate the victim's testimony that he had been raped. Furthermore, the scientific evidence presented by the state in the form of DNA analysis clearly supported the conviction of the charged offense of forcible rape, and conclusion that the defendant was the perpetrator. A review of the evidence supports the conclusion that the state negated any reasonable probability of misidentification to carry its burden of proof of the identity of the defendant as the perpetrator of both offenses. See State v. Powell, supra. Finally, the victim's testimony that the defendant performed oral sex on him, together with the testimony regarding the respective ages of the victim and the defendant, was sufficient to support the conclusion that the defendant committed the charged offense of oral sexual battery. See La. R.S. 14:43.3; State v. Rives, supra; State v. Thomas, supra; State v. Standifer, supra. It is not the function of this court to disturb the credibility determinations of the jury. Therefore, this assignment is without merit.

Habitual Offender Proceedings
At the conclusion of the habitual offender proceedings, the defendant was re-sentenced to enhanced sentences for both convictions. The defendant argues, and the state concedes, that both of the defendant's sentences should not have been enhanced since both crimes arose out of a single transaction.
In State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), the supreme court held that a defendant who was convicted on one day for three counts of armed robbery arising out of one criminal episode could not be adjudicated a habitual offender and sentenced as such on all three convictions. Also see State v. McCurtis, XXXX-XXXX (La.11/2/01), 800 So.2d 862, 863. Also, State ex rel. Berry v. State, 96-0367 (La.5/16/97), 693 So.2d 787, held that: (1) multiple convictions obtained on one day for offenses arising out of one criminal episode should be considered one conviction for purposes of applying the habitual offender law in sentencing, and (2) a defendant convicted on one day for three counts of armed robbery arising out of one criminal episode could not be adjudicated a habitual offender and sentenced as such on all three convictions. The habitual offender bill should have designated which conviction was to have the enhanced sentence, and the trial court should enhance only one conviction. Thus, the defendant's sentences are vacated and the matter is remanded for further proceedings consistent with this court's opinion.

Excessive Sentence
Since the state has conceded that both convictions should not have been enhanced, and the record and the law supports this concession, we remand for re-sentencing.

CONCLUSION
For the foregoing reasons, we affirm the defendant's convictions, but we vacate the sentences and remand the matter for further proceedings consistent with this court's opinion.
*1149 AFFIRMED IN PART. VACATED IN PART AND REMANDED.
NOTES
[1] The victim is identified by his initials because confidentiality requirements are applicable to the instant case under La. R.S. 46:1844(W).